**IN THE UNITED STATES DISTRICT COURT,**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Jane Doe,  individually | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | Case No.  3:23-cv-09280 |
| | : | |
| THE COLLEGE OF NEW JERSEY | : | |
| *Defendant.* | : | |

<u>**VERIFIED, AMENDED COMPLAINT**</u>

Plaintiff by and through their undersigned attorneys, brings this Complaint against the above-named Defendants, agents, and successors in office, to safeguard their rights under the United States Constitution, State, and Federal law, and in support thereof allege the following:

<u>**PRELIMINARY STATEMENT**</u>

1. Plaintiff Jane Doe was previously a student at the Defendant The University of New Jersey (the "Defendant," the "University" or "TCNJ").

2. Ms. Doe is a female student and is a lesbian. She is also a student with a disability, which requires that she use a mobility scooter. Specifically, she has the disability hypermobility syndrome, a connective tissue disorder.

3. Ms. Doe will be moving this Court to proceed under pseudonym, as she has been the victim of stalking by a male student, along with other acts of sexual harassment and similarly threatening behavior.

4. Throughout the time Ms. Doe attended the University, a male student subjected her to severe, pervasive, and objectively offensive sexual harassment. This included the male

student repeatedly asking her for dates even after she said no and that she is a lesbian. For example, he said to her, "I wonder what it's like to fuck a girl in a wheelchair," along with other sexually-threatening remarks.

5. Again, this male student stalked Ms. Doe while she was on campus. She now fears for her safety.

6. After Ms. Doe said no to his advances, he damaged her mobility scooter. His propensity for violence in the face of a woman saying no to his advances warrants proceeding under pseudonym for her safety.

7. The University forced Ms. Doe to withdraw from the University because it refused to protect her from ongoing sexual harassment, which included stalking, during the 2023-2024 school year.

8. Despite Ms. Doe reporting the sexual harassment, the University failed to timely conduct a Title IX investigation and it failed to offer her supportive measures.

## JURISDICTION AND VENUE

9. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiffs bring claims arising under federal law.

10. Upon information and the belief, the Defendant School District is a federal funds recipient.

11. This court has supplemental jurisdiction over the Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

12. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## **PARTIES**

13. Plaintiff Jane Doe is an adult individual. Due to her legitimate fears of stalking by one of the students at TCNJ, she is not providing her address. The coinciding Motion to Proceed under Pseudonym sets forth her rationale for not providing this information.

14. The College of New Jersey is a public university, which is believed to be doing business at 2000 Pennington Road, Ewing, New Jersey 08618.

### **FACTUAL ALLEGATIONS**

15. Plaintiff Jane Doe was a freshman in attendance at the Defendant University. She disenrolled, however, due to sexual harassment, which included stalking, that the University failed to address.

16. Ms. Doe is a female student and she is a lesbian.

17. Ms. Doe, prior to her disenrollment, was a political science major.

18. At all times relevant, she maintained a 3.918 grade point average ("GPA") for her first term and a 3.25 GPA for her second term providing a cumulative 3.584 GPA. Her GPA was lower her second semester, due to the  the sexual harassment and the University's deliberate indifference.

19. Ms. Doe is also a person with disabilities, which include, *inter alia*, hypermobility syndrome, a connective tissue disorder. Because of her disabilities, she relies on a mobility scooter and had accommodations at the University.

20. Starting in the beginning of the 2023-2024 academic year, a male classmate and student repeatedly asked Ms. Doe out for dates. Ms. Doe continued to decline his requests for dates. She also informed the male student that she is a lesbian and, as such, would not be

interested in any relationship with him. Despite the fact that Ms. Doe continued to say no and that she is gay, he continued to badger her for dates. These ongoing requests continued, unabated until February 2024.

21. Ms. Doe reports that ongoing requests for dates interfered with ability to access her education.

22. The male student also engaged in what Ms. Doe has described as stalking. Throughout the fall semester and continuing through February 2024, the male student would follow her around campus and would wait for her outside the elevator. He continued to follow her around campus despite her repeated requests for him to *leave her alone* and that she was not interested in him.

23. The male student would wait for Ms. Doe after class and would always be wherever she was. Even after she asked him to stop following her, he continued to ignore her requests and pursued her.

24. The male student often would stare at her during class in the fall 2023 semester.

25. Around February 22, 2024, the male student continued to ask Ms. Doe out for dates. When she said no, he damaged her mobility scooter. More specifically, he kicked the mobility scooter, which cracked it in direct response to her saying no to going on a date.

26. On one occasion, in response to Ms. Doe saying that she was a lesbian, he said to her "I bet I can change that." Ms. Doe interpreted this comment as being sexually-threatening and homophobic.

27. This same student, in the fall 2023 semester, also came by her dorm and asked her out on a date. When she said no, he responded, "don't be a prude." Despite her asking him to leave, he continued to ask her out on a date.

28. When Ms. Doe turned him down for dates, he called her a "fugly bitch."

29. On another occasion, while in front of several other students, the male student looked at Ms. Doe and said, "I wonder what it's like to fuck a girl in a wheelchair." At the time that the male student directed this sexually-threatening remark at Ms. Doe, she was using her mobility scooter.

30. Ms. Doe reports that the comment was threatening and embarrassing. She indicates that it disrupted her ability to focus in class and that she was fearful that he may rape her.

31. In the fall 2023 semester, after Ms. Doe continued to deny the student's advances and asked him to stop sexually harassing and stalking her, he reported Ms. Doe to the campus police. More specifically, in direct response to Ms. Doe asking him to stop sexually harassing her, he falsely reported that she was spreading rumors about him involving allegations of sexual assault and harassment. He requested a no-contact order from the Office of Student Conduct, even though he was the one stalking and harassing Ms. Doe.

32. The male student also convinced several other male students to *back him up* on his claims. Now, a group of male students are falsely accusing Ms. Doe of spreading rumors and making false reports, when it was their friend that was stalking and sexually harassing her.

33. Ms. Doe reports that the male students making these false reports is another aspect of the ongoing sexual harassment. Furthermore, these reports are retaliation for Ms. Doe reporting the sexual harassment.

34. The male student made this same false report to the Title IX coordinator around the same time as the police report. Despite the fact that Ms. Doe is gay, he falsely alleged that she

was sexually harassing him. He also falsely alleged that she was spreading rumors about him and other students, including that he sexually assaulted her.

35. It should be noted that Ms. Doe never spread rumors about the male student and any other students. Additionally, she never reported that he sexually assaulted her.

36. In response to the police report, Ms. Doe reported the male student to the campus police for stalking, sexual harassment, and damaging her mobility scooter.

37.  The campus police did not follow up on her complaint. They did, however, tell her to pepper spray the male student. (The police recorded the entire session, but have not turned over the video, even after consistent requests from undersigned counsel).

38. Ms. Doe reported the sexual harassment to the Defendant's Office of Student Conduct in February 2024. During their conversation, Ms. Doe reported that the male student was stalking her, that he was repeatedly asking her out on dates, and that he was verbally harassing her.

39. Throughout their conversation and during several follow-up correspondences, the Title IX investigator indicated that she was only interested in the sexual assault rumor. After Ms. Doe indicated that she was not sexually assaulted by the male student, the Title IX investigator unilaterally stopped the investigation.

40. The Title IX investigator ignored the verbal sexual harassment, the repeated, unwelcome requests for dates, and the stalking. She also ignored the fact that Ms. Doe is a lesbian and that a male student was badgering her for dates and making what Ms. Doe perceived to be thinly-veiled threats of sexual assault.

41. The Title IX investigator failed to offer Ms. Doe any supportive measures.

42. The Title IX investigator and the University never properly investigated or addressed the fact that the male student damaged her mobility device.

43. Because of the University's deliberate indifference, Ms. Doe ended up switching sections in one of her classes. Ms. Doe reports that she had to switch sections to get away from the male student, because he made her feel unsafe.

44. Ms. Doe withdrew from the University because it failed to address the sexual harassment and because it continued to allow the male student to stalk and threaten her.

45. Ms. Doe reports that the sexual harassment, including what she perceives as thinly-veiled threats to rape her, along with the University's deliberate indifference, have caused her mental anguish.

46. The sexual harassment and the University's deliberate indifference have forced Ms. Doe to withdraw from the University. She has lost a $5,000-per-year scholarship as a result.

47. Based on the allegations of the male student, the University is subjecting Ms. Doe to a student disciplinary process. Curiously, it is subjecting her to this process, even though it failed to timely complete a Title IX investigation. As of the date of this filing, the University has yet to initiate a Title IX investigation.

48. Additionally, the University is subjecting Ms. Doe to the disciplinary process for the conduct that formed the basis of her sexual harassment allegations against the male student. 34 CFR 106.71 specifies that "Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by title IX

or this part, constitutes retaliation." It is notable that even though the University failed to conduct a Title IX investigation, it jumped right to a disciplinary proceeding against her for claims arising out of the same facts and circumstances.

49. Ms. Doe renewed her request for a Title IX investigation several times in August and September 2024. The Defendant University refused to respond until September 10. Since the University has indicated that it would open up a Title IX investigation, no one has contacted Ms. Doe about starting the process. It has yet to begin the Title IX investigation.

50. In addition, since the University indicated that it would open up the Title IX process, it has not offered her any supportive measures.

51. The University has indicated, however, that it will be prosecuting its disciplinary hearing against her for the same conduct arising from the Title IX complaint.

52. Again, the University is prosecuting this disciplinary case against Ms. Doe without first having gone through the Title IX investigation.

53. Despite the fact that Ms. Doe has expressed that she is the victim of sexual harassment throughout the disciplinary process, the University staff who are involved continue to ignore her concerns.

54. Upon information and belief, the University is retaliating against Ms. Doe for requesting a Title IX investigation and is using this process to intimidate her.

55. The University's deliberate indifference, intentional discrimination, and retaliatory conduct is the direct and proximate causes of Ms. Doe's damages.

56. This Complaint now follows.

## COUNT 1
## SEX AND GENDER DISCRIMINATION UNDER TITLE IX
### *Ms. Doe v. The College of New Jersey*

57. Ms. Doe hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

58. Title IX, provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

59.  The University is a federal funds recipient.

60. At all times relevant, Ms. Doe was a student in good standing and was eligible to attend the Defendant University, until it forced her to withdraw.

61. The Defendant was deliberately indifferent to sexual harassment, which was severe, pervasive, and objectively offensive, as pleaded in the factual allegations.

62. The Defendant was deliberately indifferent to sexual harassment, which included stalking in violation of 34 CFR §106.30.

63. The Defendant was deliberately indifferent to the sexual harassment when it refused to timely conduct or complete a Title IX investigation.

64. The Defendant failed to offer supportive measures to Ms. Doe.

65. The Defendant's deliberate indifference barred her access to her education, which included forcing Ms. Doe to withdraw from the University for her own safety.

66. The Defendant's deliberate indifference to the ongoing sex- and gender-based discrimination has denied Ms. Doe the benefits of her education. As such, the Defendant's conduct is the direct and proximate cause of the Plaintiff's damages.

67. Wherefore, Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief

## COUNT 2
### TITLE IX RETALIATION
### *Ms. Doe v. The College of New Jersey*

68. Ms. Doe hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

69. The Defendant retaliated against Ms. Doe for using or attempting to use its Title IX process. More specifically:

   a. **Protected Activity:** The Plaintiffs had engaged in a protected activity when they participated in/attempted to participate in the Title IX investigation.

   b. **Adverse Action:** The Defendant subjected Ms. Doe to its disciplinary procedures for conduct that was part of her Title IX allegations in direct violation of 34 CFR 106.71. This Regulation affirms, "Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or  sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of  sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation."

   c. Upon information and belief, the University acted intentionally or with deliberate indifference when it decided to prosecute its disciplinary case against her.

   d. The Defendant's adverse action is the type of conduct that "might have dissuaded a reasonable [person] from making or supporting a charge of discrimination" –

see *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).

e. **Causation:** The Defendant's conduct caused, in part, Ms. Doe to withdraw from the University. In fact, rather than taking steps to protect her from the sexual harassment, including the stalking, and offering her supportive measures, it is subjecting her to a disciplinary process.

70. The retaliation is the source of Plaintiffs' damages.

71. Wherefore, Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief

**<u>Count 3</u>**
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT--DENIED THE BENEFITS OF EDUCATIONAL SERVICES BY REASON OF DISABILITY**
***Ms. Doe v. The College of New Jersey***

72. Ms. Doe hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

73. The Americans with Disabilities Act ("ADA") prohibits discrimination against qualified individuals with disabilities on the basis of their disability. 42 U.S.C. §§ 12161, 12132. To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of her disability." *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 193, 198 (3d Cir. 2013).

74. The Defendant University discriminated against, and denied Ms. Doe the benefits to her program, under the Americans with Disabilities Act:

    a.   The Plaintiff is recognized as a person with disabilities, which, again, includes *inter alia*, hypermobility syndrome, a connective tissue disorder.

    b.   The Defendant University is a federal funds recipient and is a place of public accommodation.

    c.   Ms. Doe is otherwise qualified to participate in the program at the University.

    d.   The Defendant denied Ms. Doe the benefits of her program when it failed to address the male student damaging her mobility device and when it subjected her to disciplinary charges for making a report about the damage to her mobility device.

    e.   The Defendant's deliberate indifference to the male student damaging her mobility device together with their intentional discrimination, interfered with Ms. Doe's ability to fully participate and benefit from her program.

75. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, the Defendant denied Ms. Doe the benefits of her program on the basis of her disability.

76. Wherefore, Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief

<u>**Count 4**</u>
**DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT**
*Ms. Doe v. The College of New Jersey*

77. Ms. Doe hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

78. To establish a prima facie case under the §504 of the Rehabilitation Act ("RA")[1], a party must show: (a) they were a person with a disability; (b) they were otherwise qualified for

---

[1] *See* 29 U.S.C. § 794(a).

participation in the program; (c.); the program they are challenging receives federal financial assistance; and (d.) they were subject to discrimination solely on the basis of their disability. *Hornstine v. Township of Moorestown,* 263 F. Supp. 2d 887, 905 (D.N.J 2003).

  a. The Plaintiff is recognized as a person with disabilities, which, again, includes *inter alia*, hypermobility syndrome, a connective tissue disorder.

  b. The Defendant University is a federal funds recipient and is a place of public accommodation.

  c. Ms. Doe is otherwise qualified to participate in the program at the University.

  d. The Defendant denied Ms. Doe the benefits of her program when it failed to address the male student damaging her mobility device and when it subjected her to disciplinary charges for making a report about the damage to her mobility device.

  e. The Defendant's deliberate indifference to the male student damaging her mobility device together with their intentional discrimination, interfered with Ms. Doe's ability to fully participate and benefit from her program.

79. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, the Defendant denied Ms. Doe the benefits of her program on the basis of her disability.

80. Wherefore, Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

**DAMAGES**

81. Plaintiff suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of all Defendants, in an amount that shall be proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for the loss of enjoyment of life, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; loss of income and employment opportunities; and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Doe respectfully prays that the Court award her compensatory and restitutionary damages against Defendant TCNJ for, including, but not limited to, psychological treatment, lost wages, loss of future earnings, loss of enjoyment of life, emotional pain and suffering, interference with his civil rights, and reasonable attorneys' fees and costs of suit.

## DEMAND FOR A JURY TRIAL

In accordance with federal law, Ms. Doe hereby demands a trial by jury on all appropriate issues.

Respectfully submitted,


**MONTGOMERY LAW, PLLC**
1420 Locust Street, Suite 420
Philadelphia, PA 19102
***Attorneys for Plaintiff***


Dated: September 19, 2024                         By: _____

                                                  Bradley R. Flynn
                                                  NJ Bar ID No. 173362016